<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DALMA S. EDWARDS,                     :
                                      :
              Plaintiff,    : Civil Action No. 06-3758 (RMB)
                                      :
              v.            :    **OPINION**
                                      :
CHARLES E. SAMUELS, JR.,    :
et al.,                     :
                                      :
              Defendants.   :

**APPEARANCES:**

        DALMA S. EDWARDS, Plaintiff <u>pro</u> <u>se</u>
        #54938-083
        Federal Correctional Institution
        P.O. Box 7000
        Fort Dix, New Jersey 08640

**BUMB**, District Judge

        Plaintiff Dalma S. Edwards, currently confined at the

Federal Correctional Institution in Fort Dix ("FCI Fort Dix"),

New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>,

alleging violations of his constitutional rights.  Based on his

affidavit of indigence and the absence of three qualifying

dismissals within 28 U.S.C. § 1915(g), the Court will grant

plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to

28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to

file the Complaint.

At this time, the Court must review the Complaint[1] pursuant
to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it
should be dismissed as frivolous or malicious, for failure to
state a claim upon which relief may be granted, or because it
seeks monetary relief from a defendant who is immune from such
relief.  For the reasons set forth below, the Court concludes
that the Complaint should proceed in part.

I.  BACKGROUND

Plaintiff, Dalma S. Edwards ("Edwards"), is currently
incarcerated at the Federal Correctional Institution in Fort Dix,
New Jersey ("FCI Fort Dix").  He brings this Complaint seeking to
recover money damages under Bivens v. Six Unknown Named Agents of
Federal Bureau of Narcotics, 403 U.S. 388 (1971), against the
following federal official defendants: Charles E. Samuels, Warden
at FCI Fort Dix; Allia J. Lewis; H. Thompson; Charleston Iwuagwa;
Pradip Patel; D. Scott Dodrill' Harriet Watts; John Doe #1; and
Jane Doe #1, all officers or employees of the Federal Bureau of
Prisons.  Edwards alleges that these defendants have acted, or
conspired to act, to willfully expose plaintiff to environmental
tobacco smoke, causing Edwards an unreasonable risk of harm and

---

[1]  Plaintiff filed his initial Complaint on or about August
10, 2006.  He sought to amend his Complaint by application
received on August 22, 2006.  Pursuant to Fed.R.Civ.P. 15,
Edwards may amend his Complaint as of right.  Therefore, the
Court will allow plaintiff to so amend his Complaint, and the
Court will review the claims as asserted in his Amended
Complaint, Docket Entry No. 3.

injury, in violation of the Eighth Amendment and his due process and equal protection rights under the Fifth Amendment.  He also asserts a claim of intentional infliction of mental and emotional distress, in violation of the Eighth Amendment, and denial of medical care in violation of the Eighth Amendment.  (Amended Complaint, "Preliminary Statement").

Edwards asserts federal question jurisdiction under 28 U.S.C. § 1331, based on his <u>Bivens</u> claims.  He also asserts jurisdiction under the RICO statute, 18 U.S.C. § 1964(a); under 28 U.S.C. § 1343(2) because he seeks money damages for violations of the Eighth and Fifth Amendments; under 28 U.S.C. §§ 2201-2202 for declaratory and injunctive relief; and under the diversity of citizenship statute, 28 U.S.C. § 1332.[2]  (Am. Compl., "Jurisdiction" ¶¶ 1-7).

The following factual allegations are taken from Edwards' Complaint, and are accepted as true for purposes of this review.

---

[2]  Edwards also seeks jurisdiction under 18 U.S.C. § 3332(a), the Special Grand Jury Statute, to allow plaintiff to present evidence of his claim to the Special Grand Jury.  This statute does not provide a jurisdictional basis for plaintiff's action; therefore, any claim for redress under this statute will be dismissed.  Further, Edwards fails to allege any pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations ("RICO") statutes, 18 U.S.C. § 1962 for jurisdiction under 18 U.S.C. § 1964 (a).  Therefore, plaintiff's general assertion of RICO violations will be dismissed.  Finally, there does not appear to be complete diversity of citizenship between the parties, and therefore, jurisdiction under 28 U.S.C. § 1332 is lacking.  However, this action is not subject to dismissal for jurisdictional defect because plaintiff has jurisdiction under 28 U.S.C. § 1331.

Edwards states that he has been confined at FCI Fort Dix since April 2003.  At his initial screening, he was medically examined and found to be "fit in all respects".  At that time, Edwards asked to be housed with non-smokers, based on an existing Bureau of Prisons ("BOP") policy at that time directing BOP personnel to house non-smoking inmates in non-smoking quarters to the extent practicable.  (See BOP Program Statement 1640.03, July 1994).  BOP Program Statement 1640.03 also stipulated that, when feasible, separate dormitories should be provided to house non-smoking inmates.

Edwards alleges that there were six housing units at FCI Fort Dix in 2003, which has since increased to seven housing units.  None of these units are designated as a non-smoking building.  Edwards has continually complained to FCI Dix staff and administrators about his exposure to environmental tobacco smoke ("ETS") and its effect on his health and well-being.  He claims that his complaints and grievances have been ignored or denied.[3]

In September 2005, in anticipation of a facility-wide no smoking policy expected to be implemented in October 2005, Edwards filed a remedy request to the attention of defendant Allia J. Lewis, plaintiff's assigned housing unit manager, asking

---

[3]   In fact, Edwards relates that on the first occasion he complained about the smoking in his housing unit, he was told: "Welcome to jail."  (Am. Compl., "Facts" at ¶ 10).

4

that exhaust fans be installed in the bathrooms because these
rooms were being used by the smokers in the building.  Lewis
replied that smoking was prohibited in the buildings and knew of
no plans to install exhaust fans.

Edwards wrote to Lewis again in October 2005 to complain
that the smoking problem in his housing unit still persists and
that he was experiencing headaches, nausea, dry cough, shortness
of breath, chest pains, watery itchy eyes, fatigue, and ear
infections from exposure to ETS.  Lewis responded by telling
plaintiff the new "smoke free institution" policy, effective
October 24, 2005, should address plaintiff's complaint.  Edwards
continued to file remedy forms or complaints to Lewis and Warden
Samuels.  He also filed formal grievances under the BOP
Administrative Remedy Procedure.[4]

_____

[4]  Title 28 of the Code of Federal Regulations, section
542.10, et seq. establishes administrative procedures and
remedies for federal inmates.  Under these regulations, an inmate
may seek formal review of a complaint relating to virtually any
aspect of his imprisonment.  To pursue the Administrative Remedy
Procedure, an inmate must first attempt to informally resolve the
dispute with institution staff.  See 28 C.F.R. § 542.13.  If
informal resolution efforts fail, the inmate may raise his
complaint to the Warden of the institution in which he is
confined, by means of a written request for administrative
remedy, within 20 days of the date that the basis for the
complaint occurred.  See 28 C.F.R. §§ 542.13, 542.14.  If the
Warden denies the administrative remedy request, the inmate may
then file an appeal with the Regional Director.  See 28 C.F.R. §§
542.14, 542.15.  If the Regional Director denies the appeal, the
inmate may appeal that decision to the General Counsel of the
BOP.  See 28 C.F.R. §§ 542.14, 542.15.  The administrative
process is not complete until an inmate's final appeal is denied
by the BOP's General Counsel.  It appears from the allegations in

Edwards complains that he has been exposed to ETS for an extended period of time, and continues to be exposed to excessive levels of ETS of at least 5 packs of cigarettes per day.  He further complains that defendants have not remedied the situation and will not answer his inquiries about exhaust fans and housing non-smokers together to alleviate his ETS exposure in the future. He alleges that FCI Fort Dix is not a smoke free institution as claimed by defendants, and that the defendants make minimal, if any, efforts to stop smoking infractions at FCI Fort Dix.  He states that BOP staff have a smoking hut and that they are permitted to bring in and use tobacco products.  Edwards alleges that defendant Lewis has suggested that plaintiff report those inmates who violate the non-smoking policy.  Edwards claims that this "solution" would threaten his safety and risk injury by angered prisoners.

Edwards further states in his Complaint that he has been on a 26-week medication regimen for tuberculosis and a radical drug treatment for bronchitis.  He now requires the permanent daily use of an oral inhalator pump, allegedly due to damage as a result of exposure to ETS.  He further complains that he is being treated by a psychologist for stress and depression caused as a result of the defendants inaction to eliminate the hazardous

─────────────────────

the Complaint that plaintiff may have exhausted his
administrative remedies before bringing this action.

conditions of plaintiff's confinement.  His physical ailments
allegedly affect his daily life; even the simple task of walking
up stairs is difficult for plaintiff.

Edwards also alleges that, on April 10, 2006, he wrote to
the Health Service Administrator at FCI Fort Dix, defendant
Charleston Iwuagwa and to the Senior Clinical Director, defendant
Pradip Patel.  Edwards told these defendants that he was directed
by defendant Regional Director D. Scott Dodrill to contact them
for treatment with respect to Edwards' exposure to ETS.  Edwards
has not received any response from Iwuagwa and Patel.  On April
17, 2006, Edwards filed an informal request for administrative
relief with defendant H. Thompson with regard to the medical
treatment inquiry.  Thompson told plaintiff that Health Services
did not respond to him and he sent the inquiry to defendant
Lewis.  Plaintiff contacted Lewis several times in May as to the
status of his medical requests, but to no avail.

Thereafter, on May 19, 2006, Edwards filed a grievance
against Thompson and Lewis because he had not received a timely
response.  On May 25, 2006, Edward was informed that Thompson and
Lewis had attempted to get a response from Health Services, but
none was forthcoming.  They suggested that plaintiff file a BP-9
form against Iwuagwa and Patel, respectively, regarding the
denial of medical treatment.  Edwards filed the BP-9 forms on
June 15, 2006.  He also filed a BP-10 form with the Regional

7

Director against Warden Samuels, Lewis, and Thompson based on their actions in obstructing plaintiff's administrative remedy procedure.

Edwards states that his BP-9 form was denied because he allegedly did not try to resolve these issues informally. Edwards also names Harrell Watts, an administrator at the Central Office in Washington, D.C., as a defendant because Watts disregarded plaintiff's remedy request regarding unreasonable exposure to ETS and resulting injuries.  Watts responded that "because [plaintiff] made no specific request, this response is for informational purposes only."

Edwards claims that he has exhausted his administrative remedies and alleges the following causes of action: (Count I)  a Bivens action for damages against defendants, claiming that the conditions of his confinement, namely, his exposure to excessive level of ETS, violate his Eighth Amendment right against cruel and unusual punishment; (Count II) a conspiracy claim under 42 U.S.C. § 1985, alleging that defendants conspired to deprive Edwards of equal protection of the law and by denying him timely access and use of administrative remedy provisions; (Count III) a due process violation under the Fifth Amendment, stating that the BOP policy to separate smokers from non-smokers served to create a liberty interest in smoke-free conditions of confinement; (Count IV) a denial of medical care in violation of the Eighth

Amendment; (Count V) a claim that defendant Dodrill acted with deliberate indifference to plaintiff's health and safety in violation of the Fifth and Eighth Amendments; (Count VI) a claim that defendant Watts acted with deliberate indifference to plaintiff's health and safety in violation of the Fifth and Eighth Amendments; and (Count VII) a tort claim of intentional infliction of emotional distress for refusing to move plaintiff or address his complaints about exposure to ETS and not providing medical treatment.

Edwards seeks compensatory and punitive damages in excess of $110 million.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the

plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading

10

requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.   <u>BIVENS ACTIONS</u>

Plaintiff brings this action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  In <u>Bivens</u>, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment.  In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.[5]  The Supreme Court has also implied <u>Bivens</u>

---

[5]   <u>Bivens</u> actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights.  <u>Egervary v. Young</u>, 366 F.3d 238, 246 (3d Cir. 2004), <u>cert</u>. <u>denied</u>, 543 U.S. 1049 (2005).  Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into <u>Bivens</u> suits.  <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987)).

damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979).

In order to state a claim under Bivens, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  See Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)).

The United States has sovereign immunity except where it consents to be sued.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).  Here, Edwards is seeking to recover money damages from federal officials acting in their individual and official capacities.  He also seeks injunctive relief.

Anytime a suit is brought against an officer of the federal government in which the relief sought is the prevention or discontinuance of an alleged wrong, there is a concern that the compulsion the court is asked to impose is actually compulsion against the sovereign, the United States Government.  "If it is, then the suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction."  Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 687 (1949)(holding that request for declaratory and injunctive relief against the government based on the actions of individual defendant officers was an action against the United States).  An action is against the government "if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."  Dugan v. Rank, 372 U.S. 609, 620 (1963).

Here, any Bivens' claims asserting Eighth Amendment violations by these federal defendants acting in their official capacities must be dismissed on the basis of sovereign immunity because, in essence, the claims seek to compel the Government to act to remedy the plaintiffs' situation.  However, the Complaint also clearly states that plaintiff is suing the federal officials

13

in their individual capacities.  Therefore, the Court will allow
the action to proceed at this time against all named federal
officials.  The Court now will turn to consider whether plaintiff
has alleged cognizable claims, pursuant to 28 U.S.C.
§§ 1915(e)(2) and 1915A.

IV.  ANALYSIS

Construing the Complaint liberally for this pro se litigant,
it appears that Edwards is asserting the following claims: (1) an
Eighth Amendment conditions of confinement claim relating to ETS
exposure; (2) a denial of medical care claim in violation of the
Eighth Amendment; (3) a conspiracy claim under 42 U.S.C. § 1985,
alleging that defendants conspired to deprive Edwards of equal
protection of law and by denying him timely access and use of
administrative remedy provisions; (4) a Fifth Amendment claim
alleging a violation of due process and equal protection in
failing to separate the non-smoking plaintiff from smokers; and
(5) a tort claim of intentional infliction of emotional distress
for refusing to move plaintiff or address his complaints about
exposure to ETS, and provide medical treatment.

A.  Eighth Amendment ETS Exposure Claim

The Supreme Court has held that an Eighth Amendment claim
could be based upon possible future harm to health, as well as
present harm, arising from exposure to environmental tobacco
smoke ("ETS").  The test for determining deliberate indifference

14

based on exposure to ETS has both objective and subjective components. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The objective component requires the injury to be serious, see Hudson v. McMillan, 503 U.S. 1, 8-9 (1992), and the subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. See Wilson v. Seiter, 501 U.S. 294, 302-03 (1991). In other words, the inmate must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling, 509 U.S. at 35. Exposure to ETS is not an objectively serious injury per se. Id. At 34-35.

Thus, in the context of a second-hand smoke claim, as asserted here, the inmate must establish that he has a serious medical need for a smoke-free environment, see Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992), or that regardless of health, the level of ETS in the prison creates an unreasonable risk of serious damage to his future health. Helling, 509 U.S. at 35-36(finding unreasonably high ETS exposure where plaintiff was housed with a five-packs-a-day smoker); see also Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003)(finding unreasonably high ETS exposure where plaintiff was housed for seven months with "constant" smokers); Brown v. Minor, 2003 WL 1697538 (D.Del. 2003), aff'd 316 F.3d 257 (3d Cir. 2003)(finding unreasonably high ETS exposure where plaintiff had cellmate who smoked two

packs per day).  But cf. Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001)(holding that sitting near some smokers sometimes is not an unreasonable exposure to ETS); Pryor-El v. Kelly, 892 F. Supp. 261, 267 (D.D.C. 1995)(dismissing an ETS claim in which the plaintiff alleged "only that various unnamed inmates and prison officials smoke 'in the TV room, games room, and letter writing room'").

To prove deliberate indifference under the subjective component, an inmate must show that the defendant official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  This deliberate indifference factor "should be determined in light of the prison authorities' current attitudes and conduct."  Helling, 509 U.S. at 36.  "The adoption of a smoking policy ... will bear heavily on the inquiry into deliberate indifference."  Id. at 36. However, imperfect enforcement of a non-smoking policy does not equate to deliberate indifference.  See Franklin v. District of Columbia, 163 F.3d 625, 636 (D.C.Cir. 1998);Morris v. Lorillard, 2006 WL 2796029 (M.D.Pa. Sept. 25, 2006).

Here, plaintiff alleges that he has been exposed to excessive levels of ETS of at least 5 cigarette packs a day for an extended period of time since 2003.  He also complains of headache, nausea, shortness of breath, dry cough and other

16

physical ailments due to his exposure to ETS.  Significantly, plaintiff alleges that he is on a 26-week regimen for treatment of tuberculosis, as well as a radical treatment for bronchitis. These allegations, if true, may be sufficient to show an unreasonable exposure to ETS.

In addition, plaintiff alleges that FCI Fort Dix has a non-smoking policy, which is not enforced and that his repeated requests for a non-smoking unit has been ignored despite knowledge of plaintiff's medical condition.  These facts, if true, may support a claim of deliberate indifference.  Therefore, where it appears that plaintiff may have alleged facts sufficient to support both the subjective and objective prongs of an ETS exposure claim under the Eighth Amendment, the Court will allow the claim to proceed at this time.[6]

B.  Denial of Medical Care Claim

In Count IV of his Complaint, plaintiff alleges that defendants have denied him medical care with regard to his exposure to high levels of ETS.

---

[6]  In Counts V and VI of the Complaint, Edwards alleges that defendants Dodrill and Watts acted with deliberate indifference to plaintiff's health and safety.  These claims appear to allege violations of plaintiff's Eighth Amendment rights regarding his exposure to high levels of ETS and denial of medical care.  Since the Court will allow both Eighth Amendment claims to proceed at this time, the separate claims against defendants Dodrill and Watts, as they are related to the Eighth Amendment violations alleged, also will be permitted to proceed as part of the Eighth Amendment claims.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Id. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also

18

Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006
(1988).

    The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  See Natale, 318 F.3d at 582 (finding
deliberate indifference requires proof that the official knew of
and disregarded an excessive risk to inmate health or safety).
"Deliberate indifference" is more than mere malpractice or
negligence; it is a state of mind equivalent to reckless
disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S.
825, 837-38 (1994).  Furthermore, a prisoner's subjective
dissatisfaction with his medical care does not in itself indicate
deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d
217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145
(D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly,
"mere disagreements over medical judgment do not state Eighth
Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir.
1990).  "Courts will disavow any attempt to second-guess the
propriety or adequacy of a particular course of treatment ...
[which] remains a question of sound professional judgment."
Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d
Cir. 1979) (internal quotation and citation omitted).  Even if a
doctor's judgment concerning the proper course of a prisoner's

19

treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The court has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

In this case, Edwards alleges that defendants Iwuagwa and Patel have ignored his requests for medical care related to his exposure to ETS.  Plaintiff further states that he was directed by the Regional Director to contact these two defendants for treatment for his ETS exposure.  Defendants have failed to

20

respond to plaintiff's request without reason or explanation. Given the serious nature of tuberculosis and plaintiff's alleged bronchitis, it would appear that Edwards has alleged facts sufficient to show serious medical need. Defendants' inaction or failure to respond to repeated medical requests for no apparent reason also may be sufficient to show deliberate indifference. See Monmouth County Correctional Institutional Inmates, 834 F.2d at 346-47 (if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out)(*citing* Ancata v. Prison Health Servs., 769 F.2d 700, 704 (11th Cir. 1985)). Thus, accepting the allegations of the Complaint as true, as required at this screening stage, the Court will allow this denial of medical care claim to proceed past the initial screening stage.

C. Conspiracy Claim

Next, Edwards alleges a conspiracy claim under 42 U.S.C. § 1985. He claims that defendants denied him timely access and use of administrative remedy provisions. These allegations suggest that plaintiff is alleging a claim under § 1985(3).

Title 42 U.S.C. § 1985(3) reads, in pertinent part:

If two or more persons in any State or Territory[7] conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving,

---

[7] Although the statute refers to state officials, federal officers can be sued under the civil rights conspiracy statute as well. See Baird v. Haith, 724 F. Supp. 367 (D.Md. 1988).

either directly or indirectly, any person or class of
persons of the equal protection of the laws, or of
equal privileges and immunities under the laws; or for
the purpose of preventing or hindering the constituted
authorities of any State or Territory from giving or
securing to all persons within such State or Territory
the equal protection of the laws; ... in any case of
conspiracy set forth in this section, if one or more
persons engaged therein do, or cause to be done, any
act in furtherance of the object of such conspiracy,
whereby another is injured in his person or property,
or deprived of having and exercising any right or
privilege of a citizen of the United States, the party
so injured or deprived may have an action for the
recovery of damages occasioned by such injury or
deprivation, against any one or more of the
conspirators.

42 U.S.C. § 1985(3).

To state a claim under § 1985(3), one must allege:

(1) a conspiracy; (2) for the purpose of depriving,
either directly or indirectly, any person or class of
persons of the equal protection of the laws, or of
equal privileges and immunities under the laws; and (3)
an act in furtherance of the conspiracy; (4) whereby a
person is either injured in his person or property or
deprived of any right or privilege of a citizen of the
United States.

United Broth. of Carpenters and Joiners of America, Local 610,

AFL-CIO v. Scott, 463 U.S. 825, 829 (1983).  With respect to the

second element, the conspiracy must be motivated by "some racial,

or perhaps otherwise class-based, invidiously discriminatory

animus."  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  The

classes protected by § 1985(3) are narrowly-drawn and the Supreme

Court has recognized only claims by victims of racially motivated

conspiracies: minorities and, perhaps, their political

22

supporters.  See United Broth. of Carpenters and Joiners, 463
U.S. at 837-39.  While leaving open the possibility that
§ 1985(3) might apply to class-based animus not based upon race,
the Supreme Court has refused to extend the statute's scope to
"conspiracies motivated by economic or commercial animus," see
United Brotherhood of Carpenters and Joiners, 463 U.S. at 836-38.
To the extent the requirement can be met by something other than
racial animus, it "unquestionably connotes something more than a
group of individuals who share a desire to engage in conduct that
the § 1985(3) defendant disfavors."  Bray v. Alexandria Women's
Health Clinic, 506 U.S. 263, 268-69 (1993).

     Applying this guidance and the history of § 1985(3), the
United States Court of Appeals for the Third Circuit has noted
the breadth of the statute's language and has held that it does
protect against conspiracies directed against women, see Novotny
v. Great American Federal Savings & Loan Ass'n, 584 F.2d 1235,
1238-44 (3d Cir. 1978), and against the mentally retarded, see
Lake v. Arnold, 112 F.3d 682, 686 (3d Cir. 1997).  In reaching
these conclusions, the Court relied heavily upon the fact that
discrimination based upon gender or mental handicap, like
discrimination based upon race, often rests on immutable
characteristics for which the plaintiff bears no responsibility
and which have no relationship to ability.  See Lake, 112 F.3d at
687; Novotny, 584 F.2d at 1243.

23

Here, Edwards' § 1985(3) conspiracy claim fails to allege any racial or otherwise class-based invidiously discriminatory animus at the heart of the defendants' action.[8]  To the extent that he seeks to rely on his status as a convicted criminal as a basis for his claim, this Court is not aware of any court that has held that convicted criminals constitute a class which could claim the protection of § 1985(3), nor does this Court see in such status the type of immutable characteristic, for which the class member bears no responsibility, that has historically required protection.  Cf., e.g., Schoenfield v. County of Humboldt, 875 F.2d 870, 1989 WL 57644, **3-4 (9th Cir. 1989) (persons accused of child molestation do not constitute a class subject to the protection of § 1985(3)); Trerice v. Pedersen, 769 F.2d 1398, 1402-03 (9th Cir. 1985) (no cause of action based on status as military prisoner); McCracken v. City of Chinook, 652 F.Supp. 1300, 1307 (D.Mont. 1987) (class of "accused defendants" and "prisoners" not entitled to claim protection of § 1985(3)); Nakao v. Rushen, 542 F.Supp. 856, 859 (N.D. Cal. 1982) (class of "state prisoners" not protected under § 1985(3)).

---

[8]  Plaintiff's status as a non-smoker is not a basis for a § 1985(3) claim.

Therefore, plaintiff has failed to state a claim for
conspiracy to deprive him of the equal protection of the laws
under § 1985(3), and this claim will be dismissed accordingly.[9]

D.   <u>Fifth Amendment Due Process and Equal Protection Claims</u>

Next, it appears that Edwards is alleging a violation of his
Fifth Amendment rights to due process and equal protection of the
laws.[10]  As to the due process violation, Edwards asserts that BOP
Program Statement 1640.03 (setting forth a policy to separately
house non-smoking inmates from smokers, where feasible) has
created a liberty interest in the conditions of his confinement,
and his continued exposure to ETS violates this right.

Inmates claiming a due process violation under the
Fourteenth (state) or Fifth (federal) Amendments must show that
they have been deprived of a protected liberty or property
interest by arbitrary government action.  <u>Meachum v. Fano</u>, 427
U.S. 215, 223-24 (1976).  These interests may arise from the

---

[9]   Edwards has alleged that defendants conspired to deny him
timely access and use of administrative remedy procedures.  He
also alleges that he has fully exhausted his administrative
remedies.  Thus, it would appear that plaintiff was able to
utilize the administrative procedures, and plaintiff's claim of a
conspiracy to prevent access to remedy procedures will be
dismissed without prejudice.  To the extent that plaintiff can
show that his grievances were routinely denied as untimely, the
Court will allow plaintiff to amend his Complaint, pursuant to
<u>Fed.R.Civ.P.</u> 15, upon proper motion to the Court.

[10]   For the reasons stated in the preceding section of this
Opinion, plaintiff's Fifth Amendment equal protection claim will
be dismissed for failure to state a cognizable claim for relief.

Constitution, statutes, and administrative regulations.  <u>Gorman</u>

<u>v. Broglin</u>, 710 F. Supp. 1256, 1263 (N.D.Ind. 1989).

Here, federal regulations provide that:

> To advance towards becoming a clean air environment and to
> protect the health and safety of staff and inmates, the
> Bureau of Prisons will restrict areas and circumstances
> where smoking is permitted within its institutions and
> offices.

28 C.F.R. § 551.160.

This regulation was amended sometime after 1989.  Prior to

amendment, the regulation stated that:

> The Warden, as set forth in this rule, may establish
> smoking/no smoking areas within the institution.
> (a) Smoking is prohibited in those areas where to allow
> smoking would pose a hazard to health or safety.
> (b) Smoking/no smoking areas may be established in other
> areas of the institution, in the discretion of the Warden.

28 C.F.R. § 551.160 (1989).

It is clear that the language in the current regulation

mandates the BOP to restrict areas and circumstances where

smoking is permitted, whereas the earlier regulation was merely

permissive.  However, the requirement that prison areas be

restricted as smoke free does not create a protected liberty

interest.

Indeed, individuals generally do not have a constitutional

right to be free from second-hand smoke.  <u>See</u> <u>Kensell v. State of</u>

<u>Okl.</u>, 716 F.2d 1350 (10th Cir. 1983); <u>Gasper v. Louisiana Stadium</u>

<u>and Expo. Dist.</u>, 577 F.2d 897 (5th Cir. 1978), <u>cert</u>. <u>denied</u>, 439

U.S. 1073 (1979); <u>Caldwell v. Quinlan</u>, 729 F. Supp. 4, 7 (D.D.C.

26

1990).  Further, the Constitution does not mandate comfortable prisons.  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  To hold that the Constitution empowers the courts to regulate second-hand smoke in a prison facility "would support the most extreme expectations of the critics who fear the federal judiciary as a superlegislature promulgating social change under the guise of securing constitutional rights."  Kensell, 716 F.2d at 1351.

Therefore, this Court finds that an inmate does not have a protected liberty interest in a smoke-free prison that would trigger the protections of the Due Process Clause.  Plaintiff's due process claim will be dismissed for failure to state a claim.

E.  Intentional Infliction of Mental and Emotional Distress

Finally, Edwards asserts a claim of intentional infliction of mental and emotional distress based on the deliberate actions of the defendants in failing to remove plaintiff from exposure to high levels of ETS despite plaintiff's medical condition. Typically, an inmate cannot obtain relief for mental or emotional injury in the absence of a physical injury.  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  See Allah v. Al-Hafeez, 226 F.3d 247, 250-51 (3d Cir. 2000).

Here, Edwards has alleged physical injury from his exposure to high levels of ETS.  Thus, his tort claim alleging emotional injury is not subject to a <u>sua</u> <u>sponte</u> dismissal at this time because Edwards has alleged physical injuries that are being exacerbated by defendants' failure or refusal to act in removing Edwards to a smoke-free or smoke-restricted environment. Therefore, the Court will allow this claim to proceed at this time.[11]

## V.   CONCLUSION

Therefore, for the reasons set forth above, plaintiff's claims alleging (1) a conspiracy by defendants in violation of 42 U.S.C. § 1985, and (2) violations of his rights of due process and equal protection under the Fifth Amendment, will be dismissed without prejudice in their entirety as against all defendants for failure to state a claim.  Finally, plaintiff's Eighth Amendment claims alleging unreasonable exposure to ETS and denial of medical care, and his tort claim alleging intentional infliction

---

[11]   It is not apparent from the Complaint whether Edwards has filed the appropriate notice of tort claim with the BOP before bringing this action.  However, Edwards has alleged that he exhausted his administrative remedies with respect to all of his claims.  Thus, the Court will not dismiss this tort claim <u>sua</u> <u>sponte</u>, but rather, will leave this issue to the defendants to raise, if applicable, as an affirmative defense.

of emotional distress, will be allowed to proceed at this time.

An appropriate order follows.


                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge

Dated: January 8, 2007